UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SANTOS GONZALES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-68 |
| | § | |
| STATE OF TEXAS, *et al*, | § | |
| | § | |
| Respondents. | § | |

### MEMEORANDUM AND RECOMMENDATION

Petitioner Santos Gonzales currently is serving a ten-year sentence of community supervision pursuant to an order of deferred adjudication entered against him following his plea of guilty to four counts of aggravated sexual assault of a child and two counts of indecency with a child.  He argues that his constitutional rights were violated in the plea process. The actions about which he complains occurred in Nueces County, Texas.

Petitioner, represented by counsel, filed this petition pursuant to 28 U.S.C. § 2254 on March 11, 2013 (D.E. 1).  On June 5, 2013, Respondents Javed Syed, Director of the Nueces County Community Supervision & Corrections Department, and Officer Ninfa Martinez filed a motion for summary judgment (D.E. 24) to which Petitioner did not respond.  For the reasons stated herein, it is respectfully recommended that Respondent's

motion be granted and Petitioner's application for habeas corpus relief be denied because it is unexhausted, procedurally barred, and without merit.

## JURISDICTION

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and venue is proper in this court because petitioner was convicted in Nueces County, which is located in the Corpus Christi Division of the Southern District of Texas.  28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## BACKGROUND

### A.  Factual Background

According to a police incident report, on March 10, 2009, A.P., an eleven-year-old middle-school student, told the school band director that Petitioner, her stepfather, had raped her four days earlier (Offense Report, D.E. 1-9 at 7).  She told the band director that her mother told A.P. that if she told anyone, authorities would remove A.P. from the home (Memo, D.E. 1-9 at 2).  The band director accompanied A.P. to the school counselor's office (Letter, D.E. 1-9 at 5).

A.P. was crying and told the counselor that Petitioner had raped her several times, which she described as "putting his thing inside her."  The first and third time he was drunk.  The second time he beat her mother and then raped A.P.  A.P. repeated her allegation that her mother told her that reporting the incident would result in A.P. being removed from the home.  In addition, A.P. said that before the last incident, her mother warned her stepfather that if he hurt her children again, she would leave, but he had raped her again anyway.  A.P. said that her stepfather claimed not to remember the incidents

and that her mother told A.P. that if she intended to report the assaults, to call her mother first so that she could be prepared.  A.P. also stated that her mother was about eleven weeks pregnant (Letter, D.E. 1-9 at 5).

When a law enforcement officer questioned A.P.'s mother, she told him that A.P. had told her about the allegations but she did not believe her.  The officer declined to release A.P. to her mother's custody, but transported her to the hospital for a medical examination (Report, D.E. 1-9 at 8).  The sexual assault nurse examiner did not note any trauma (Med. Record, D.E. 1-9 at 12).[1]

At some point after Petitioner was indicted but before trial, A.P. recanted her allegations.  She said she lied because she believed she was not being loved or cared for by Petitioner and because she did not "get [her] way about things." (D.E. 1-11 at 1).

A.P. and her sister were removed from their home and placed with their maternal grandmother.  While there, A.P. underwent a mental health evaluation where she told the mental health professional that her father did not sexually assault her.  She said she was seeking attention and was modeling herself after an older stepsister who had made similar allegations in the past.  She expressed regret for her actions and frustration that her recantation was not believed.  She wanted to move back in with her mother and Petitioner (Evaluation, D.E. 1-9 at 14-16).

---

[1] The medical record attached to Petitioner's Application is incomplete and appears to lack the narrative portion of the examination (D.E. 1-9 at 11-13).

### B.  Procedural Background

On April 2, 2009 Petitioner was charged by indictment with continuous sexual abuse of a young child or children in violation of Tex. Pen. Code. § 21.02.  On November 30, 2009, pursuant to a plea bargain, he pleaded guilty to four counts of aggravated sexual assault of a child and two counts of indecency with a child.  The court entered an order of deferred adjudication and ordered Petitioner to spend 180 days in jail, to be subject to community supervision for ten years and to pay fines, courts costs and restitution in the amount of $5,250.  The court entered the deferred adjudication order on November 30, 2009 but did not sign the written order until December 8, 2009 (Order, D.E. 24-4 at 13-14).

Petitioner did not file a direct appeal.  On August 25, 2010 Petitioner filed an application for habeas corpus relief in the trial court pursuant to Tex. Code Crim. Pro. art. 11.072.[2]  No further action was taken on the application (Docket Sheet, D.E. 1-5 at 3).

On January 13, 2011 Petitioner filed another Art. 11.072 application, asserting that he received ineffective assistance of counsel when his attorney advised him to enter the plea bargain agreement with the State (D.E. 24-3 at 1-8).  The State filed an answer and included an affidavit from Petitioner's attorney in which he denied rendering ineffective assistance and explained why he advised Petitioner to accept the terms of the plea bargain (D.E. 24-4 at 1-12, 21).  The trial court found that there was no need for an evidentiary

---

[2] Art. 11.072 establishes procedures for an application for writ of habeas corpus in which the applicant seeks relief from an order or judgment of conviction ordering community supervision.  Petitioner also filed an application for habeas relief pursuant to Art. 11.07, but it was dismissed because there was no final felony conviction in his case (D.E. 24-16 at 14-16; D.E. 22-19 at 25-26).

hearing or expansion of the record, that Petitioner did not receive ineffective assistance of counsel, that his guilty plea was entered knowingly and voluntarily and that he was not entitled to habeas corpus relief (Memorandum, D.E. 24-5 at 1).

Petitioner appealed the decision of the trial court and the Thirteenth Court of Appeals affirmed the denial of habeas relief on July 19, 2012. *Ex Parte Gonzales*, No. 13-11-00135-CR, 2012 WL 2928924 (Tex. App. –Corpus Christi 2012, pet. ref'd)(located herein at D.E. 24-9 at 1-5). Petitioner filed a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals, in which he asserted only that the Thirteenth Court of Appeals abused its discretion and erred in concluding that the trial court did not abuse its discretion in failing to conduct an evidentiary hearing on Petitioner's state writ application (D.E. 24-12 at 1-17). The PDR was refused on November 27, 2012. *Ex Parte Gonzales*, No. 1204-12 (D.E. 24-13 at 1).

Petitioner filed the instant habeas corpus application on March 11, 2013 and argues that he received ineffective assistance of counsel when his attorney advised him to plead guilty because after A.P. recanted her story, there was no other evidence in the record against him. In Respondents' motion for summary judgment, they argue that Petitioner's cause of action is time-barred and also without merit.

## APPLICABLE LAW

### A.  Statute of Limitations

Respondent argues that petitioner's application for habeas corpus was filed outside the one-year limitation period set by the Anti-Terrorism and Effective Death Penalty Act

("AEDPA").  Regarding the deadline for filing an application for writ of habeas corpus,

the statute provides:

(d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant  was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.  Petitioner filed his current application for writ of habeas corpus after

the effective date of the AEDPA and so is subject to its provisions.  *Lindh v. Murphy*, 521

U.S. 320 (1997).

For the purpose of determining the AEDPA filing deadline, petitioner's conviction

became final 30 days after judgment was entered,[3] or on December 30, 2009.  Tex. R.

App. Pro. 26.2(a)(1).  He had one year from that date, or until December 30, 2010, to file

---

[3] An order of deferred adjudication is a judgment for purposes of 42 U.S.C. § 2244. *Caldwell v. Dretke*, 429 F.3d 521 (5th Cir. 2005).

his federal petition.  He did not file it until March 11, 2013, more than three years too late.

Under the statute, the time during which a properly filed application for state court collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).  See also *Coleman v. Johnson*, 184 F.3d 398 (5th Cir. 1999) (petitioner entitled to equitable tolling from the time he filed his state habeas application until it was denied).  Respondent argues that Petitioner did not file his state application until January 11, 2011, after the limitations period had expired.  If that is true, the state habeas petition did not toll the federal deadline.  *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Petitioner argues that he filed a first application for habeas relief on August 25, 2010, which would have tolled the limitations period, but that that the clerk lost the motion (D.E. 1 at 6 and n. 2).  Petitioner attached a docket sheet in his underlying criminal case that shows that he did file an application for habeas relief on that date (D.E. 1-5 at 3), but provides no evidence that the application was lost.[4]

Respondents assert that although Petitioner filed his first application on August 25, 2010, he did not serve Respondents as called for by Tex. Code Crim. Pro. Art 11.072 §5(a) and that the failure to serve Respondents means that the application was not

---

[4] In the first paragraph of the second habeas application it is stated that, "This is a refile of Cause No. 09-CR-829-F(1) which was filed on August 25, 2010.  The District Attorney's Office noticed our office that the original document could not be found in the District Clerk's Office.  The District Attorney's Office also asserts that they were never served with a copy of the original writ." (D.E. 24-3 at 1).  The assertion that the first petition was lost is unsubstantiated hearsay and not competent summary judgment proof.

properly filed.  In support of their argument, Respondents attached a verified copy of a note dated December 14, 2010 by an assistant district attorney indicating that a hearing had been set on the first application but was rescheduled when the attorney told Petitioner's attorney that Respondents had not been served (MSJ Ex. 15; D.E. 24-18 at 1). Petitioner did not contest the validity of the note.

The note is evidence that the original application was not lost, but does not clarify whether the state court petition was "properly filed" under 42 U.S.C. § 2244(D)(2).  In *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), the Supreme Court noted that an application is filed, as the term is commonly understood, when it is delivered to and accepted by the appropriate court officer for placement in the official record.  An application is "properly filed" when its delivery and acceptance comply with the applicable statutes and rules governing filings.  Such rules generally prescribe, for example, the form of the document, the time limits for its delivery, the court and office where it must be filed and the requisite filing fee.  *Id.*  When determining whether an application was properly filed, a court looks to the procedural rules governing the court's jurisdiction to consider the *application* and not to the rules governing whether it can consider a particular claim. *Larry v. Dretke*, 361 F.3d 890, 893 (5th Cir. 2004)(citing *Artuz*, 531 U.S. at 9-10) (emphasis in original).

The statute provides that "[i]mmediately upon filing an application, the applicant shall serve a copy of the application on the attorney representing the state . . . ."  Tex. Code Crim. Pro. Art 11.072 §5(a).  Respondent argues that because Petitioner did not serve the State's attorney, the application was not properly filed.  However, the plain

language of the statute indicates that service should occur either simultaneously with, or immediately after, the filing of the application, indicating that all that is required for the filing itself is presentation of the application to the clerk of the court in which community supervision was imposed.  Tex. Crim. Pro. Ann. Art. 11.072 §2(a).  The result of not serving Respondents is that the trial court could not proceed to adjudicate the case.  As pointed out in *Larry*, that consideration is separate from the issue of whether the application was properly filed.  Because Petitioner presented the application to the clerk in accordance with Art. 11.072 §2(a) on August 25, 2010, it is recommended that Petitioner be found to have filed his state habeas application on that day.

From December 30, 2009, the date Petitioner's conviction became final, until August 25, 2010, was 237 days.  At that point, Petitioner had 128 days left in the one-year filing period.  His state habeas proceeding ended when the PDR was refused on November 27, 2012.  Petitioner filed his application 104 days later, on March 11, 2013.  Accordingly, it was timely filed.

**B.  Exhaustion**

Respondents did not address the exhaustion issue, other than to note that in order to satisfy the exhaustion requirement a plaintiff must present a claim to the highest court of the state for review and Plaintiff filed a PDR with the Texas Court of Criminal Appeals (Mot. for Sum. Jmt., D.E. 24 at 3 and n. 7).  A district court may raise the exhaustion issue *sua sponte*, provided that the State has not waived it.  *Woodfox v. Cain*, 609 F.3d 774, 792 (5th Cir. 2010).  "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the

State, through counsel, expressly waives the requirement."  28 U.S.C. § 2254(b)(3).

"'The touchstone for determining whether a waiver is express is the clarity of the intent to waive.'"  *Carty v. Thaler*, 583 F.3d 244, 256 (5th Cir. 2009)(quoting *D'Ambrosio v. Bagley*, 527 F.3d 489, 497 (6th Cir. 2008)).  A party will not be deemed to have waived the exhaustion issue if it simply has failed to raise it.  *Taylor v. Cain*, 545 F.3d 327, 332-333 (5th Cir. 2008).  In this case, Respondents did not expressly waive the exhaustion issue.  Therefore, it will be addressed.

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief."  *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir.1995).  The requirement for exhaustion is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court.  *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004).  It is not enough that the facts to support the federal claim were before the state courts or that a similar state-law claim was made.  *Wilder v. Dretke*, 274 F.3d 255, 259 (5th Cir. 2001).  A petitioner "'must have fairly presented the substance of his claim to the state courts.'"  *Wilder*, 274 F.3d at 259 (quoting *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) and *Picard v. Connor*, 404 U.S. 270, 275-76 (2001)).  Where a petitioner advances an argument in federal court based on a legal theory distinct from that relied upon in state court, he does not satisfy the exhaustion requirement.  *Wilder*, 274 F.3d at 259.

The exhaustion requirement "is not jurisdictional, but reflects the policy of federal-state comity, which is designed to give state courts the initial opportunity to consider and correct alleged violations of their prisoners' federal rights." *Morris v. Dretke*, 413 F.3d 484, 490-91 (5th Cir. 2005)(citing *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)).  Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1)(B).

If a petitioner fails to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, there is a procedural default for purposes of federal habeas.  *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).[5]

In this case, it does not appear that Petitioner exhausted any of the claims he presents herein, because the only issue he presented to the Texas Court of Criminal Appeals was that the intermediate court of appeals erred when it concluded that the trial court did not abuse its discretion in failing to conduct an evidentiary hearing (PDR app., D.E. 24-12 at 6).  Because Petitioner did not present his ineffective assistance of counsel

---

[5] A district court may raise the issue of procedural default *sua sponte*, but must balance the federal interests in comity and judicial economy against the petitioner's substantial interest in justice.  *Magouirk v. Phillip*s, 144 F.3d 348, 359 (5th Cir. 1998).If a district court raises procedural default *sua sponte*, it should consider whether justice requires that the habeas petitioner be afforded notice and an opportunity to brief the issue.  A Petitioner's opportunity to file objections to a Magistrate Judge's *sua sponte* invocation of procedural default affords both notice and a reasonable opportunity to oppose application of the procedural default doctrine in the district court.  *Id.* at 359-360.

claim to the Texas Court of Criminal Appeals and because it is now too late to do so,[6] the

claim is unexhausted and procedurally barred.  Accordingly, it is recommended that

Petitioner's ineffective assistance of counsel claim be dismissed as unexhausted and

procedurally barred.

## C.  Merits

Although it is recommended that Petitioner's claim be dismissed, in the alternative

the merits will be addressed.  Petitioner argues that his attorney should not have advised

him to plead guilty because there was no evidence on which a trier of fact could have

based a finding that he was guilty.

### (1) Standard of Review

Under the AEDPA, a state prisoner may not obtain relief with respect to any

claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

8 U.S.C. § 2254(d) (West 1996).

Under the "contrary to" clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on

a question of law or if the state court decides a case differently than the Court on a set of

---

[6] A PDR must be filed within 30 days after either the day the court of appeals' judgment
was rendered or the day the last timely motion for rehearing or timely motion for en banc
reconsideration was overruled by the court of appeals.  Tex. R. App. Proc. 68.2(a).

materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, the state court's decision.  Then it must ask whether it is possible that fair-minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *Harrington*, 131 S.Ct. at 786.  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet.  "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court litigation of claims already rejected in state proceedings . . . .  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with

this Court's precedents.  It goes no farther."  *Id.*  "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-787.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision.  *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).  A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)(citations omitted).  This deference extends not only to express findings of fact, but to the implicit findings of the state court.  *Id.*  In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S.Ct. at 784.

### (2)  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.*, 466 U.S. at 687-88.  Petitioner must show "significant prejudice" in a noncapital

context.  *Armstead v. Scott*, 37 F.3d 202 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993

F.2d 85, 88, n. 4 (5th Cir. 1993)).

Judicial scrutiny of counsel's performance must be highly deferential and a court

must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance.  *Strickland*, 466 U.S. at 689.  A court must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed

as of the time of counsel's conduct.  A petitioner must identify the acts or omissions of

counsel that are alleged not to have been the result of reasonable professional judgment.

The court must then determine whether, in light of all the circumstances, the identified

acts or omissions were outside the wide range of professionally competent assistance.

*Id.*, 466 U.S. at 690.

> An ineffective-assistance claim can function as a way to escape rules of waiver
> and forfeiture and raise issues not presented at trial, and so the Strickland standard
> must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten
> the integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S. at 689-690, 104 S.Ct. 2052. . . . Unlike a later reviewing
> court, the attorney observed the relevant proceedings, knew of materials outside
> the record, and interacted with the client, with opposing counsel, and with the
> judge.  It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence."  *Id.*, at 689, 104 S.Ct. 2052; . . . The question is
> whether an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom.  *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

*Harrington*, 131 S.Ct. at 788.  In addition, federal habeas courts must guard against the

danger of equating unreasonableness under *Strickland* with unreasonableness under §

2254(d).  "When § 2254(d) applies, the question is not whether counsel's actions were

reasonable.  The question is whether there is any reasonable argument that counsel

satisfied *Strickland's* deferential standard." *Id.* Defendants are entitled to effective

assistance of competent counsel during plea negotiations. *Lafler v. Cooper*, 132 S.Ct.

1376, 1384 (2012).

Because Petitioner pleaded guilty, he can only allege ineffective assistance of

counsel as it relates to the voluntariness of his plea.

> [A] guilty plea represents a break in the chain of events which has preceded it in
> the criminal process. When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea. He may only attack the
> voluntary and intelligent character of the guilty plea by showing that the advice he
> received from counsel was not within the standards set forth in [*McMann v.
> Richardson*, 397 U.S. 759 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The test for determining the validity of a guilty plea is whether the plea represents

a voluntary and intelligent choice among the courses of action open to the defendant.

*Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000)(citing *Hill v. Lockhart*, 474 U.S.

52 (1985)). When a court assesses the validity of a guilty plea it looks to all of the

relevant circumstances surrounding it. *Matthew*, 201 F.3d at 364-365 (citing *Brady v.

United States*, 397 U.S. 742, 749 (1970)).

A defendant pleading guilty must be competent and must have notice of the nature

of the charges against him. The plea must be entered voluntarily and not be the product

of actual or threatened physical harm or mental coercion overbearing the will of the

defendant. Nor can the plea be the result of state-induced emotions so intense that the

defendant was rendered unable to weigh rationally his options with the help of counsel.

*Matthew*, 201 F.3d at 365 (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941); *Brady*, 397 U.S. at 750 and *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).  In addition, the defendant must understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Matthew*, 210 F.3d at 365 (citing *Henderson*, 426 U.S. at 645, n. 13; *Brady*, 397 U.S. at 755 and *Machibroda*, 368 U.S. at 493).

When making an ineffective assistance of counsel claim based on plea negotiations, a petitioner must show that the outcome of the plea process would have been different with competent advice.  *Id.*  The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  A petitioner must show that "there is a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*  In addition, in a non-capital case, to establish prejudice a prisoner "must show that there is a reasonable probability that absent counsel's errors, the defendant's sentence would have been significantly less harsh."  *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)(quoting *Spriggs* , 993 F.2d at 88).

Petitioner argues that his attorney should not have advised him to plead guilty because the victim recanted her testimony, there was no physical evidence of trauma and a mental health professional who examined the victim believed that her allegations were false.  Petitioner appears to assert that his attorney could have filed a pre-trial motion to dismiss the case and the trial court would have been compelled to grant it.

Contrary to Petitioner's assertion, a trial court generally does not have the power to dismiss a case prior to trial unless the prosecutor requests dismissal. *State v. Johnson*, 821 S.W.2d 609, 613 (Tex. Crim. App. 1991). Because the prosecutor did not request dismissal of the case, Petitioner's options were to plead guilty or go to trial.

If he had gone to trial, the prosecution could have presented any statement A.P. made to police. The fact that she later recanted her statement it did not destroy its probative value. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)(en banc). Also, the prosecution could have called the band director to testify as to what A.P. had told him because she was eleven years old at the time of the assault and he was the first person she told about the incident. Tex. Code. Crim. Pro. Art. 38.072. In addition, the State could have presented testimony from the nurse examiner regarding anything A.P. told her about the assault. *Wilder v. State*, 111 S.W.3d 249, 255 (Tex. App. – Texarkana 2003, pet. ref'd); Tex. R. Evid. 803(4). The fact that there was no trauma noted in the medical exam could have been considered by the jury, but was not dispositive of whether the assault occurred. *See Owens v. State*, 381 S.W.3d 696, 705 (Tex. App. --Texarkana 2012, no pet.)(nurse examiner testified that about ninety percent of the time on sexual assault examinations no trauma is found and she did not expect to find trauma when more than ninety-six hours had passed after alleged assault). While the recantation and lack of physical trauma evidence would have weighed in Petitioner's favor, his claim that there was no evidence on which a jury could have based a guilty finding is not supported by the record.

In addition, Petitioner's attorney stated in an affidavit filed in the state habeas proceeding that he had numerous conversations with Petitioner and explained that A.P.'s recantation did not lead to an automatic dismissal of the case.  He further explained that there were other facts and potential witnesses in his case.  A.P.'s recantation was used in plea negotiations and helped secure the offer of deferred adjudication in Petitioner's case. Petitioner's attorney also stated that he was willing to try the case and that Petitioner made the decision to plead guilty (Aff., D.E. 24-4 at 21).

The record supports the conclusion that Petitioner's attorney rendered effective assistance during the plea process and Petitioner has offered nothing to show that the state habeas court's determination that he received effective assistance is contrary to Supreme Court precedent.  Accordingly, he has failed to sustain his burden and judgment should be entered for Respondent on Petitioner's cause of action.

**D.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds.  In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 120 S.Ct. at 1604 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on procedural grounds and, in the alternative, on the merits.  Reasonable jurists would not find it debatable that petitioner's claims are unexhausted and procedurally barred.  Nor would jurists of reason debate denial of habeas relief to petitioner on the merits.  Therefore it is further recommended that any request for a COA be denied because he has not made the necessary showing for issuance of a COA on either ground.

## RECOMMENDATION

It is respectfully recommended that Respondent's motion for summary judgment (D.E. 24) be granted. Petitioner's application for habeas corpus relief should be dismissed as unexhausted and procedurally barred and also on the merits.  It is further recommended that a Certificate of Appealability be denied.

ORDERED this 28th day of August, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 ( 5th Cir. 1996)(en banc).